**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff-Respondent,**

v.                                                                       **Civ. 03-0722 BB/LCS
Cr.  01-1713 BB**

**JAMES H. GONZALEZ,**

      **Defendant-Petitioner.**

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court upon Movant's (Gonzalez's) Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed June 13, 2003. (Doc. 34)[1] and his Amended Motion filed September 8, 2003 (Doc. 42). Gonzalez, currently incarcerated and proceeding *pro se,* attacks the plea entered on February 27, 2002 and the Sentence entered on June 17, 2002, in the case styled *United States of America v. James H. Gonzalez*, and numbered CR 01-1713 BB, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that Gonzalez's Motion is not well-taken and recommends that it be **DENIED**.

**I.    Proposed Findings**

      1.    On October 3, 2001, Gonzalez was arrested in Las Cruces, NM by Alcohol Tobacoo and Firearms agents who had been conducting an ongoing investigation into alleged violations of

---

[1] All docket numbers correspond to *United States of America v. James H. Gonzalez*, CR 01-1713 BB.

federal controlled subsance and firearm laws by the Las Cruces New Mexico Banditos Motorcycle Club. Doc. 1. On December 20, 2001, Gonzalez was indicted with:

A. two counts of intentionally distributing less than 500 grams of a mixture and substance containing a detectable amount of Cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(C) [Counts I and II],

B. one count of of possession with intent to distribute less than 500 grams of a mixture and substance containing a detectable amound of Cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(C) [Count III],

C. one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C.§ 924(c)(1)(A)(B)(ii) [Count IV],

D. one count of possession of a machine gun in violation of 18 U.S.C. § 922(o)(1) and 18 U.S.C. § 924(a)(2) [Count V], and

E. one count of possession of an unregistered NFA firearm (sawed off shot gun) in violation of 26 US.C. §§ 5845(a), 5861(d) and 5871 [Count VI].

2. On October 10, 2001, Paul Rubino, CJA Attorney, was appointed to represent Gonzalez. Doc. 4. At his arraignment on December 27, 2001, Gonzalez entered a plea of not guilty on all counts and jury trial was set for February 12, 2002. Doc. 11. On February 15, 2002, a change of plea hearing was set before the Honorable Bobby R. Baldock, United States Circuit Judge. Doc. 15.

3. On February 27, 2002, Gonzalez pleaded guilty to Count IV, possession of a firearm in furtherance of a drug trafficking crime, pursuant to a plea agreement. Doc. 16 at 2. The plea agreement made clear that the Court must impose a term "of imprisonment for a period of not less than thirty (30) years" and that the defendant understood this term. *Id.* The parties stipulated that Gonzalez had demonstrated acceptance of responsibility pursuant to U.S.S.G.§ 3E1.1 and that if he provided an oral or written statement to the United States Probation Officer who prepared the Presentence Report ("PSR") that he would be entitled to a reduction of three levels given that he

could establish that entitlement. *Id.* at 4.  The Government was to move to dismiss Counts I, II, III, V, and VI at the time of sentencing.  *Id.* at 5.  The plea agreement recounted that the parties understood the stipulations were not binding on the Court and that Gonzalez "knowingly waived his right to appeal any sentence within the guideline range. . ." *Id.* at 4-5.

   4.  On April 17, 2002 Mr. Rubino filed a Motion to withdraw as Gonzalez's counsel. Doc. 19.  A hearing on the Motion was held before the Honorable Karen Molzen, United States Magistrate Judge, on April 30, 2002 and the Motion was granted.  Doc. 21-22.  On May 6, 2002 Cesar Pierce-Varela, another CJA attorney, was appointed as Gonzalez's counsel. Doc. 23.

   5.  Given Gonzalez's guilty plea on Count IV, possession of a firearm in furtherance of a drug trafficking crime, and only on Count IV, the PSR established Gonzalez's base offense level at 22.  PSR ¶ 40. The PSR determined that Gonzalez had two adult criminal convictions and assessed one point for one of them.  PSR ¶¶ 19-20.  Two points were added because Gonzalez was under a criminal justice sentence at the time of the commission of the instant offense for a total of three criminal history points.  *See* U.S.S.G.§ 4A1.1(d).  Based on a total of three criminal history points, Gonzalez was assigned to Criminal History Category II.  With a base level offense of 22 and a Criminal History Category II, Gonzalez's guildeline imprisonment range was 46 to 57 months. PSR ¶ 40. The PSR reported that the mandatory term of imprisonment required by statute for Count IV of the indictment was thirty years, consecutive to other Counts.  PSR ¶¶ 38-40. *See also* U.S.S.G. § 2K2.4 and 18 U.S.C. § 924(c)(1)(A)(B)(ii).  Should the statutorily required minimum sentence exceed the maximum guideline range, the stautorily required minimum sentence becomes the guideline sentence. U.S.S.G.§ 5G1.1(b).  Thus, the thirty year mandatory sentence, as required by

statute, became the guideline sentence.[2]

6.      Mr. Pierce-Varela filed an objection to the PSR, although his objection merely concurred with the information in the PSR. He stated that base offense level should have been 22 with a Criminal History Category II, resulting in a guideline imprisonment range of 46 to 57 months. Doc. 25.

7.      On June 17, 2002, Judge Baldock sentenced Gonzalez to 30 years incarceration, with five years of supervised release. Doc. 31. He also levied a special assessment of $100.00. Doc. 31. Judge Baldock prohibited Gonzalez from possessing firearms, explosives, or weapons, required that Gonzalez participate in a drug and alcohol program, and undergo drug testing. *Id.* In addition, he dismissed Counts I, II, III, V, VI. Doc. 30. On June 26, 2002, the Honorable Bruce D. Black, United States District Judge signed and filed a Judgment stating that Gonzalez was sentenced the 30 years incarceration, followed by five years supervised release.

8.      On June 13, 2003, Gonzalez filed his Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, (Doc. 34) raising the following issues:

   I.     Whether Gonzalez was denied effective assistance of counsel when Mr. Rubino did not file a Motion to withdraw his guilty plea.

   II.    Whether Gonzalez was denied effective assistance of counsel when he entered his guilty plea on Count IV.

   III.   Whether Gonzalez was denied effective assistance of counsel when counsel did not pursue an entrapment defense.

   IV.    Whether Gonzalez was denied effective assistance of counsel when counsel did not file a direct appeal of his sentence and conviction.

---

[2] As noted in Paragraph 3, the plea agreement made clear to defendant that the mandatory sentence was thirty years. *See* Doc. 16 at 2.

9.      The § 2255 Motion, filed within one year of the Judgment and Sentence, is timely under the Antiterrorism and Effective Death Penalty Act. *See* 28 U.S.C. § 2255. An evidentiary hearing is unnecessary because the motion, files, and records of the case conclusively show that Gonzalez is not entitled to relief. *See* 28 U.S.C. § 2255; Rule 8(a), Rules Governing Habeas Corpus Under Section 2255.

10.     Gonzalez did not raise his claims on direct appeal. In general, "[a] defendant who fails to present an issue on direct appeal is barred from raising the issue in a § 2255 motion, unless he can show cause for his procedural default and actual prejudice resulting from the alleged errors, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed.'" *United States v. Talk*, 158 F.3d 1064, 1067 (10th Cir. 1998) (*citing United States v. Frady*, 456 U.S. 152, 167-68 (1982)). Ineffective asssistance of counsel claims are an exception to this general rule and may be raised for the first time in a § 2255 proceeding. *See United States v. Galloway*, 56 F.3d 1239, 1240-41 (10th Cir. 1995). Gonzalez's claims all involve ineffective assistance of counsel and they are not barred by the rule announced in *United States v. Frady*, 456 U.S. at 167-68.

11.     In order to obtain habeas relief for ineffective assistance of counsel, "a Petitioner must establish both that his attorney's representation was deficient and that he was prejudiced by that deficiency." *James v. Gibson,* 211 F.3d 543, 555 (10th Cir. 2000)(citing *Strickland v. Washington*, 466 U.S. 668, 688)(1984)). In order to demonstrate prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

12.     Counsel is stongly presumed to have rendered adequate assistance and made all

5

significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The inquiry is "'highly deferential' to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). A fair assessment of attorney performance requires a reviewing court to "eliminate the distorting effects hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "An ineffective assistance claim may be resolved on either performance or prejudice grounds alone." *Fox v. Ward*, 200 F. 3d 1286, 1295 (10th Cir. 2000); *see also Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995). Gonzalez has failed to satisfy either prong of *Strickland*.

13.     In his first claim, Gonzalez asserts that counsel was ineffective for failing to file a Motion to withdraw his guilty plea. On April 17, 2002 Gonzalez's first counsel, Paul Rubino, Esq., filed a Motion to withdraw as counsel on the grounds that "Defendant Gonzalez has informed attorney Rubino that he no longer wants to be represented by attorney Rubino in this matter in any manner" and "that he wants another attorney to review the discovery and plea agreement negotiated by attorney Rubino, and [to] file a motion to withdraw the plea agreement negotiated by attorney Rubino." Doc. 19. On April 30, 2002 Magistrate Judge Molzen held a hearing and determined that Mr. Rubino's Motion was well-founded and entered an Order allowing Mr. Rubino to withdraw as counsel of record. *See* Doc. 21-22. Mr. Rubino could not have rendered ineffective assistance of counsel on this matter, as Gonzalez himself wanted another attorney to review the plea agreement and to file the Motion to withdraw his guilty plea.

14.     Nor was Gonzalez prejudiced on this matter, since his subsequent counsel, Cesar Pierce-Varela, Esq., did in fact file a Motion to withdraw Gonzalez's guilty plea on June 10, 2002.

Doc. 26. On June 17, 2002 at sentencing, Circuit Judge Baldock held a hearing on this Motion and denied it, saying that "I'm going to determine at this time that there is not a basis for you to withdraw your plea of guilty and that you did enter into that guilty plea knowingly and voluntarily." Tr. 6/17/02 at 10. Thus, Gonzalez cannot meet the *Strickland* standard on this claim, as the Motion to withdraw was filed and Gonzalez had a full and fair opportunity to present his argument in open court.

      15.     In a related ineffective assistance of counsel claim, Gonzalez asserts that Mr. Rubino was ineffective by not explaining the plea and thus, the plea was not made knowingly, intelligently, or voluntarily. He further asserts that Mr. Rubino persuaded him to enter the plea. As the Supreme Court noted in *Hill v.Lockhart*, "[in] the context of guilty pleas, the first half of the *Strickland v.Washington* test is nothing more than a restatement of the standard of attorney competence already set forth. . . The second, or 'prejudice' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (internal citations omitted). The test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002) (quoting *Hill*, 474 U.S. at 56). Further, the Tenth Circuit has found that "Advice - even strong urging by counsel" does not indicate that a plea was coerced, nor does it "invalidate a guilty plea" *Id.* at 1214. Finally, in *Miller v. Champion*, the Tenth Circuit stated that weighing "the evidence that might have been marshaled at trial. . . provide[s] circumstantial evidence

7

of the defendant's state of mind when he made his plea." *Miller v. Champion*, 262 F.3d 1066, 1073 (10th Cir. 2001).

   16. In his affidavit, Mr. Rubino stated that he reviewed and explained all discovery with Gonzalez and that he further "explained and discussed the plea offer and its ramifications, the Federal Sentencing Guidelines, the applicable statutory penalties and the fact that a guilty plea . . . carried not less than thirty years . . . I did not tell him that he would receive a sentence of 'maybe eight years.' I did not withhold information from [Gonzalez]."[3]  Resp. Ex. A. ¶¶ 3-4.  At the Plea Hearing, Circuit Judge Baldock asked Gonzalez whether he was satisfied with the representation of his attorney and whether he had been able to discuss the plea agreement with Mr. Rubino.  Tr. 2/27/02 at 7-8. Gonzalez responded affirmatively to both questions. *Id.*  Judge Baldock further questioned Gonzalez as to whether "...anyone has attempted to force [him] to sign this plea agreement?" and whether "...anyone has tried to force [him] to plead guilty in this matter?"  Tr. 2/27/02 at 9.  Gonzalez responded in the negative to both questions and went on to state that he understood the terms of the plea agreement.  *Id.*  Counsel for the government indicated that "Mr. Gonzalez faces a statutory mandatory minimum sentence of 30 years..." *Id.* at 11.  At this point Judge Baldock asked, "did you [Gonzalez] hear the Government say what the maximum possible punishment you can receive in jail is?"  *Id.*  Mr. Gonzalez answered affirmatively and when asked how many years that was, Gonzalez responded by saying, "Thirty."  *Id.*  Clearly, there was no violation of Rule 11.  *See* FED R. CRIM. P. 11(b).  Judge Baldock ultimately found that "[Gonzalez] is fully competent and capable of entering an informed plea . . . that [Gonzalez] is aware of the nature and charges and consequences of that

---

[3] Even absent Mr. Rubino's affidavit, Gonzalez is not entitled to relief for the reasons and findings stated herein.

plea, and that the plea of guilty is a knowing and voluntary plea supported by the independent basis of fact containing each of the essential elements of the offense." *Id.* at 22. Further, as noted above Judge Baldock reiterated this finding on June 17, 2002. Tr. 6/17/02 at 10. Gonzalez has failed to show that there is a reasonable probability that he would have insisted on going to trial. As stated in *Champion*, an examination of evidence that would have been available at trial helps reveal "the defendant's state of mind when he made his plea." *Champion*, 262 F.3d at 1073. Gonzalez knew the case against him was very strong and that he was facing substantially higher exposure if he proceeded to trial because additional charges could have been brought against him. *See* Tr. 2/27/02 at 18-20. As such, Gonzalez was keenly aware that he was reaping a large benefit by entering a guilty plea on only one count, Count IV, and this lends even more credence to Judge Baldock's finding that Gonzalez's plea was entered into knowingly and voluntarily. Gonzalez has failed to establish that Mr. Rubino's representation fell below an objective standard of reasonableness or that he would have insisted on going to trial. Mr. Rubino did not provide ineffective assistance of counsel with respect to the guilty plea.

17.     Gonzalez also asserts that Mr. Rubino was ineffective for failing to pursue an entrapment defense. First, the Tenth Circuit has held that the entrapment defense is not available to a defendant who pleads guilty because such a defendant waives the right to trial and as a consequence he also "waives non-jurisdictional defenses, including entrapment, a non-jurisdictional defense on the merits." *United States v. Riles*, 928 F.2d 339, 342 (10th Cir. 1991). Thus, by pleading guilty to Count IV of the indictment, Gonzalez effectively waived his right to an entrapment defense. Moreover, in his affidavit, Mr. Rubino stated, "During the tenure of my representation of Defendant Gonzalez, I researched the possibility of an entrapment defense and I came to the conclusion that no

9

entrapment defense was available. I explained and discussed the unavailability of an entrapment defense with Defendant Gonzalez. When I withdrew from the representation of Defendant Gonzalez attorney Cesar Pierce-Varela became his defense counsel...and after [he] had an opportunity to review the documents, video tapes and audio tapes that I had provided to him . . . he was also of the opinion that an entrapment defense was not available to Defendant Gonzalez." Resp. Ex. A ¶ 6. Strategic choices, at which counsel arrives after thorough investigation of relevant law and facts, are "virtually unchallengeable." *See Strickland*, 466 US. at 690. Given that Mr. Rubino researched the availability of an entrapment defense and determined that it was not viable, his decision not to pursue a frivolous defense was sound strategy. Even if Mr. Rubino had presented the Court with an entrapment defense, Gonzalez has failed to show the result would have been different. Gonzalez has failed to satisfy the *Strickland* standard in this claim.[4]

18.  Finally, Gonzalez asserts that counsel was ineffective for failing to file an appeal of his sentence and conviction. Gonzalez's plea agreement contained a waiver of appeal provision which stated that Gonzalez "knowingly waived his right to appeal any sentence within the guideline range..." Doc. 16 at 4-5. At his Plea Hearing, Judge Baldock asked Gonzalez, ". . . do you understand that this provision which says waiver of appeal rights, that if the judge sentences you within the guideline range applicable to you, that you're giving up your right to appeal that judgement of this Court?" Tr. 2/27/02 at 12. Gonzalez responded that he understood and that he intended to waive his right to appeal. *Id.* at 12-13. As such, neither Mr. Rubino nor Mr. Pierce-Varela could render ineffective

---

[4] The entrapment defense in Federal Court is difficult to establish at best; it "is an extraordinary defense reserved for only the most egregious circumstances." *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir. 1992). The test is a subjective one in which the entrapment defense "focus[es] on the intent or predisposition of the defendant to commit the crime," as opposed to the conduct of the Government. *United States v. Russell*, 411 U.S. 423, 429 (1973).

assistance of counsel on this claim because the waiver, which Gonzalez accepted in open court, did not allow them to file an appeal on Gonzalez's behalf. That is, due to the waiver, filing an appeal was not a course of action either attorney could have pursued. Further, Gonzalez never asserted that the waiver of appeal provision was unenforceable. Neverthless, such provisions have been upheld by this Circuit if they are made knowingly and voluntarily, and the Court considers the waiver to be knowing and voluntary as long as it is stated as such in the plea agreement. *See United States v. Cockerham*, 237 F.3d 1179, 1182 (10th Cir. 2001) and *United States of America v. Black*, 201 F.3d 1296, 1300-01 (10th Cir. 2000). The record indicates that Gonzalez waived his right to appeal knowingly and that the entire plea agreement was entered into voluntarily. *See* Doc. 16 at 4-5 and Tr. 2/27/02 at 12-13. Gonzalez has failed to establish that the waiver provision is unenforceable or that the failure to file an appeal satisfies the *Strickland* standard.

**IV.     Recommended disposition**

I recommend that Movant's (Gonzalez's) Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed June 13, 2003. (Doc. 34) and his Amended Motion filed September 8, 2003 (Doc. 42) be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the Unitesd States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections

are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**